1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9
JERRY LUM, et al.,

10
                                    NO. CIV. S-10-1807 LKK/DAD
11           Plaintiffs,

12      v.
                                         O R D E R
13 COUNTY OF SAN JOAQUIN,
et al.,
14

15           Defendants.

16 _____/

17      This case arises from the death of Jeremy Lum, whose body was

18 discovered in the San Joaquin River three days after he was

19 released from San Joaquin County Jail. Pending before the court is

20 a motion for summary judgment by defendants. This order will

21 address all issues in that motion with the exception of whether any

22 entity has <u>Monell</u> liability.

23                    **I. Factual Background**

24      The following facts are undisputed, unless noted.

25      Plaintiffs in this case are the parents of decedent Jeremy Lum

26 ("Lum"). Lum was diagnosed with bipolar disorder, and was admitted

                                   1

1   to St. Joseph's Behavioral Health Center for bipolar episodes on
2   multiple occasions between 2005 and 2009. Despite his disorder, Lum
3   played sports in high school and graduated from U.C. Berkeley. Lum
4   worked for a family company and lived on his own.

5       On July 8, 2008, Lum's father went to Lum's house to pick him
6   up for dinner. Lum was asleep, and Mr. Lum woke him up to tell him
7   that it was time for dinner. Lum did not know it was dinner time,
8   and refused to go with Mr. Lum. Mr. Lum was surprised by Lum's
9   behavior.

10      Later that evening, Lum appeared at the Archuleta residence,
11  which is .3 miles from his home. Lum was wearing shorts and a t-
12  shirt, but no shoes. Lum said that he was looking for a female with
13  a name that the Archuletas did not know. Jestina Archuleta called
14  911. Lum was at the Archuletas door for approximately three
15  minutes, and then wandered around the Archuletas' front yard
16  looking confused. Lum then walked across the street, stopped for
17  some time facing a light pole. Lum then entered the Fireside Inn,
18  a bar, and then exited. Plaintiffs assert that Lum was inside the
19  bar for less than one minute. See James Archuleta Depo. 23:3-19.
20  Lum then went to a nearby park and stood by some poles with his
21  dog.

22      Sergeants Steven Pease and Raymond Walters and Deputy Davis
23  ("the arresting officers") contacted Lum. The arresting officers
24  are all employees of the San Joaquin County Sheriff's Department.
25  According to a declaration by San Joaquin County Sheriff's
26  Department Lieutenant John Williams, the county Sheriff's

1 Department "provides the City of Lathrop police services pursuant
2 to contract." Decl. Williams.

3      Lum had vomit on his shirt, and appeared confused and
4 disoriented.

5      At some point, the officers decided to arrest Lum and take him
6 to jail, although the facts surrounding this decision are heavily
7 disputed by the parties. It is undisputed that at least Sergeant
8 Pease thought that Lum was having a mental health episode.

9      Before taking him to jail, the officers attempted to locate
10 Lum's family. Sergeant Walters called Lum's father's cell phone,
11 and the call went to voicemail. Sergeants Pease and Walters took
12 Lum's dog to Lum's home.

13      Mr. Archuleta testified that he asked one of the officers what
14 was going on, and the officer responded "we think he's off his
15 meds." Each of the officers denies saying this to Mr. Archuleta.
16 Lum did not tell the arresting officers that he had any mental
17 disorder.

18      Deputy Davis transported Lum to the San Joaquin County Jail,
19 which is operated by San Joaquin County. At the jail, Lum told
20 Officer Mendoza that he was under the care of a doctor for his
21 bipolar condition during a medical screening questionnaire. Officer
22 Mendoza placed Lum in a holding cell shortly after midnight. Some
23 time between midnight and 6:00 a.m., Officer Mendoza observed Lum
24 trying to open imaginary doors inside the holding cell.

25      County policy requires officers to check on arrestees in
26 sobering cells ever 15 minutes and to make a note of these checks

1  on an inmate observation log. <u>See</u> San Joaquin County Sheriff's
2  Department Custody Division Policy Manual Section 3.1.0., Ex. B to
3  Moule Decl., ECF No. 78. Officer Mendoza did not check on Lum every
4  15 minutes, but he recorded on the log that he did so.

5      A note was entered at 5:00 a.m. that Lum was observed by Nurse
6  Velarde. At 6:00 a.m., release officer Fernandez started her shift.
7  She reviewed the files of inmates scheduled for release that
8  morning. Fernandez released Lum at 7:30 a.m.

9      Lum's family reported him missing on July 9, 2009. On July 12,
10  2009, Lum's body was found in the San Joaquin River. The cause of
11  death was declared to be drowning caused, or contributed to, by
12  amphetamine and Orphenadrine toxicity.

13      Plaintiffs' Second Amended Complaint ("SAC") alleges the
14  following claims for relief arising from the facts described above:
15  Section 1983 Claim for Violation of Decedent's Fourth Amendment
16  Rights; Section 1983 Claim for Violation of Plaintiffs' Fourteenth
17  Amendment Rights; Section 1983 Claim for Inadequate and Reckless
18  Training; Violation of the Americans with Disabilities Act;
19  Wrongful Death–Negligence; and False Arrest.

20      **II. Standard for a Motion for Summary Judgment**

21      Summary judgment is appropriate "if the movant shows that
22  there is no genuine dispute as to any material fact and the movant
23  is entitled to judgment as a matter of law." Fed. R. Civ. P.
24  56(a); <u>Ricci v. DeStefano</u>, 557 U.S. 557, 129 S. Ct. 2658, 2677
25  (2009) (it is the movant's burden "to demonstrate that there is 'no
26  genuine issue as to any material fact' and that they are 'entitled

4

to judgment as a matter of law'"); <u>Walls v. Central Contra Costa</u>
<u>Transit Authority</u>, 653 F.3d 963, 966 (9th Cir. 2011) (same).

Consequently, "[s]ummary judgment must be denied" if the court
"determines that a 'genuine dispute as to [a] material fact'
precludes immediate entry of judgment as a matter of law." <u>Ortiz</u>
<u>v. Jordan</u>, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), <u>quoting</u> Fed.
R. Civ. P. 56(a); <u>Comite de Jornaleros de Redondo Beach v. City of</u>
<u>Redondo Beach</u>, ___ F.3d ___, 2011 WL 4336667 at 3 (9th
Cir. September 16, 2011) (same).

Under summary judgment practice, the moving party bears the
initial responsibility of informing the district court of the basis
for its motion, and "citing to particular parts of the materials
in the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact
cannot be ... disputed." Fed. R. Civ. P. 56(c)(1); <u>In re Oracle</u>
<u>Corp. Securities Litigation</u>, 627 F.3d 376, 387 (9th Cir. 2010)
("The moving party initially bears the burden of proving the
absence of a genuine issue of material fact"), <u>citing</u> <u>Celotex v.</u>
<u>Catrett</u>, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the
burden then shifts to the non-moving party to establish the
existence of a genuine issue of material fact. <u>Matsushita Elec.</u>
<u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986);
<u>Oracle Corp.</u>, 627 F.3d at 387 (where the moving party meets its
burden, "the burden then shifts to the non-moving party to
designate specific facts demonstrating the existence of genuine
issues for trial"). In doing so, the non-moving party may not rely

1  upon the denials of its pleadings, but must tender evidence of
2  specific facts in the form of affidavits and/or other admissible
3  materials in support of its contention that the dispute exists.
4  Fed. R. Civ. P. 56(c)(1)(A).

5       "In evaluating the evidence to determine whether there is a
6  genuine issue of fact," the court draws "all reasonable inferences
7  supported by the evidence in favor of the non-moving party."
8  Walls, 65.3 F.3d at 966.   Because the court only considers
9  inferences "supported by the evidence," it is the non-moving
10 party's obligation to produce a factual predicate as a basis for
11 such inferences.   See Richards v. Nielsen Freight Lines, 810 F.2d
12 898, 902 (9th Cir. 1987).   The opposing party "must do more than
13 simply show that there is some metaphysical doubt as to the
14 material facts ....   Where the record taken as a whole could not
15 lead a rational trier of fact to find for the nonmoving party,
16 there is no 'genuine issue for trial.'"   Matsushita, 475 U.S. at
17 586-87 (citations omitted).

18                           **III. Analysis**
19 **A. First Claim: Section 1983 Claim for Violation of Decedent's**
20 **Fourth Amendment Rights.**

21      This claim is against defendants City of Lathrop, and Deputy
22 Davis, Sergeant Walters, and Sergeant Pease (the "arresting
23 officers").   Plaintiffs allege that the arresting officers
24 unlawfully arrested Lum, and that "in the City of Lathrop, police
25 sergeants, including Sergeants Walters and Pease, are invested by
26 law-or by custom or usage having the force of law-with final

1 policymaking authority to effect arrests and/or ratify or sanction

2 arrests made by other officers." Second Amended Complaint ("SAC")

3 ¶ 56, ECF No. 26. Plaintiffs allege that the City of Lathrop is

4 liable pursuant to <u>Monell v. Department of Social Services</u>, 365

5 U.S. 167 (1978), because Sergeants Walker and Pease were acting as

6 municipal officials. Plaintiffs allege that the City of Lathrop has

7 a custom, policy, practice, or procedures pertaining to the

8 treatment and temporary detention of people arrested pursuant to

9 California Penal Code § 647(f), which makes it a misdemeanor to be

10 intoxicated in public.

11      Defendants claim that the arresting officers are entitled to

12 qualified immunity, and that the arresting officers do not have

13 final policy-making authority for the City of Lathrop. The question

14 of whether the City is liable for the arresting officers' conduct

15 under a <u>Monell</u> theory will be addressed in a later order of this

16 court, following additional briefing from the parties.

17 **i. Qualified Immunity**

18      Qualified immunity "protects government officials from

19 liability for civil damages insofar as their conduct does not

20 violate clearly established statutory or constitutional rights of

21 which a reasonable person would have known." <u>Pearson v. Callahan</u>,

22 129 S.Ct. 808, 815, 172 L. Ed. 2d 565 (2009). In order to be

23 clearly established, "the contours of the right must be

24 sufficiently clear" so as to be obvious to a reasonable official.

25 <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1978). To meet this

26 standard, the right alleged to be violated cannot be only the

1  "general constitutional guarantee (e.g., the Fourth Amendment

2  freedom from unreasonable searches and seizures), but its

3  application in a particular context." Baker v. Racansky, 887 F.2d

4  183, 186 (9th Cir. 1989) (citing Anderson, 483 U.S. at 639-40 and

5  Todd v. United States, 849 F.2d 365, 370 (9th Cir. 1988)).

6     A warrantless arrest by an officer is reasonable under the

7  Fourth Amendment where there is probable cause to believe that a

8  criminal offense has been or is being committed. Devenpeck v.

9  Alford, 543 U.S. 146, 153 (2004). Whether probable cause exists

10 depends on the reasonable conclusion to be drawn from the facts

11 known to the arresting officer at the time of the arrest. Id. An

12 officer's subjective reason for making the arrest is not relevant.

13 "Evenhanded law enforcement is best achieved by the application of

14 objective standards of conduct, rather than standards that depend

15 on the subjective state of mind of the officer." Horton v.

16 California, 496 U.S. 128, 138 (1990).

17    Qualified immunity shields arresting officers from suit for

18 damages if "a reasonable officer could have believed the arrest to

19 be lawful, in light of clearly established law and the information

20 the [arresting] officers possessed." Anderson v. Creighton, 483

21 U.S. 635, 641 (1987). Even law enforcement officials who

22 "reasonably but mistakenly conclude that probable cause is present"

23 are entitled to immunity. Hunter v. Bryant, 502 U.S. 224, 227

24 (1991).

25    A § 1983 defendant is entitled to summary judgment if

26 "discovery fails to uncover evidence sufficient to create a genuine

1   issue as to whether the defendant" violated clearly established

2   law. <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). Summary

3   judgment on qualified immunity is not proper unless the evidence

4   permits only one reasonable conclusion. Where "conflicting

5   inferences may be drawn from the facts, the case must go to the

6   jury." <u>Munger v. City of Glasgow Police Dep't</u>, 227 F.3d 1082, 1087

7   (9th Cir. 2000).

8        Here, the arresting officers are entitled to qualified

9   immunity if, under the circumstances, it was reasonable for the

10  officers to believe that plaintiff was intoxicated. The arresting

11  officers are entitled to summary judgment if there is no genuine

12  issue as to whether it was reasonable for the officers to believe

13  that plaintiff was intoxicated. Drawing all inferences in favor of

14  the non-moving party, the court cannot conclude, on the record

15  before it, that this was a reasonable belief under the

16  circumstances.

17       James Archuleta, who had a three minute conversation with Lum

18  shortly before his arrest, testified that Lum "looked like he was

19  walking fine," and did not recall him stumbling. Depo. James

20  Archuleta 24:18-20. Mr. Archuleta asserted that "there was no

21  slurring. I could understand what he was saying." <u>Id.</u> 25:17-18. Mr.

22  Archuleta testified that he did not smell any alcohol on Lum,

23  despite having talked with him at a distance of about three feet.

24  <u>Id.</u> 49:2. Mr. Archuleta also testified that he asked one of the

25  officers what was going on with Lum, and the officer responded

26  "Well, we think he's off his meds." <u>Id.</u> 42:2.

1    The Arrest Report dated July 8, 2009 charged Lum with public

2    intoxication, California Penal Code §647(f). The check box for

3    "mumbles/slurred" is checked, but no narrative description is

4    included. A second page of the Arrest Report is dated July 11,

5    2009, two days after Lum was reported missing, and states that Lum

6    was staggering, with red watery eyes, slurred speech, and the odor

7    of alcohol.[1]

8    A report prepared by Sergeant Walters states that prior to

9    July 8, 2009 Walters "was familiar with Jeremy Lum having a mental

10   health condition." Missing Person Report, Ex. 14 to Walker Decl.,

11   ECF No. 88.

12   Sergeant Pease testified that Lum was "slurring" and that he

13   was exhibiting signs of a person suffering from mental illness.

14   Depo. Pease, 29:15-31:1. Pease testified "The answers [Lum] would

15   give to questions weren't connected to the questions, complete

16   disconnect. In my opinion, it appeared he was having visual

17   hallucinations, seeing things that weren't there. Those would be

18   things that mostly made me believe there was mental health issues."

19   Id. 31:3-8. Pease also testified that the arresting officers

20   discussed the fact that Lum was having a mental health episode, but

21   that he also was intoxicated. Id. 45:18-22.

22   Mr. Crabtree, a bartender at the Fireside Inn testified that

23   he spoke to Lum after Lum left the Archuleta residence, but before

24

25        [1] Defendants assert that the later date is the date that the
26   report was entered into a database, but that both pages of the
     arrest report were completed on July 8, 2009.

10

1   the police arrived. Mr. Crabtree testified that Lum appeared steady

2   on his feet, and that he did not mumble or have slurred speech.

3   Depo. Crabtree 23:20-28:3. Mr. Crabtree testified that nothing in

4   his interaction with Lum on July 8 suggested that Lum had been

5   drinking. Id. 41:2-7.

6       Defendants offer a deposition of plaintiffs police expert,

7   Stephen D'Arcy as evidence that it would have been reasonable for

8   the officers to arrest Lum under §647(f). Contrary to defendants'

9   assertion, MSJ 11, D'Arcy did not agree that it was reasonable to

10  arrest Lum. D'Arcy stated that it would have been reasonable

11  assuming that "all of the elements of the crime were present and

12  the officers have made that decision based upon constitutional

13  standards." Depo. D'Arcy 113: 5-7.[2]

14      Plaintiffs' psychiatry expert testified that many of the

15  symptoms of mental illness that Lum displayed on a videotape from

16  the jail, could also be symptoms of alcohol intoxication. Depo.

17  Saldanha.

18      The court concludes that there remains a genuine issue as to

19  whether the defendants had probable cause to arrest Lum for public

20  intoxication. Based on the evidence submitted, the court cannot

21  

22      [2] Defendants' Motion for Summary Judgment cites a quotation
    from the D'Arcy deposition that does not appear in the transcript.
23  Defendants quote the following exchange from the deposition: "Q:
    Okay. So it was appropriate then to arrest Mr. Lum for public
24  intoxication? A: That's the option they elected, yes. Q: But was
    it an appropriate election of the number of options to arrest him
25  under 647(f)? A: Yes, it fell under the elements of the crime." See
    Defs.' Mot. 11. That exchange does not appear in the deposition
26  transcript at the page and lines cited, or anywhere else as far as
    the court can tell.

1  conclude that it is uncontestable that a reasonable officer would
2  have believed that probable cause existed for the arrest under the
3  circumstances. Hunter v. Bryant, 502 U.S. 224, 227 (1991).
4  Accordingly, defendants are not entitled to summary judgment on the
5  basis of qualified immunity.

6  **B. Second Claim: Section 1983 Claim for Violation of Plaintiffs'**
7  **Fourteenth Amendment Rights**

8       This claim is alleged against the arresting officers and
9  Officer Mendoza. Plaintiffs allege that Lum was a pre-trial
10  detainee, creating a special relationship between the decedent and
11  the defendants and giving rise to a duty not to leave Lum in a
12  situation that was more dangerous than the one they found him in.
13  Specifically, plaintiffs allege that by failing to administer a
14  medical or psychological evaluation at the time of arrest and
15  detention, and by releasing him six miles from home without money,
16  shoes, a phone, or a means of transportation, the defendants placed
17  Lum in a situation that was more dangerous than the one they found
18  him in.

19       Generally, public officials are not liable for omissions. See,
20  e.g., DeShaney v. Winnebago County Dep't of Social Services, 489
21  U.S. 189 (1989). There are two exceptions to this general rule: the
22  state-created danger exception, and the special relationship
23  exception. Where there is "affirmative conduct on the part of the
24  state in placing the plaintiff in danger," an official may be
25  liable for harm that occurs. L.W. v. Grubbs, 974 F.2d 119, 121 (9th
26  Cir. 1992). This "state-created danger" exception has been found

where a police officer ejected a woman from a vehicle in a high-crime area where she was subsequently raped, <u>Wood v. Ostrander</u>, 879 F.2d 583 (9th Cir. 1989); where police officers detained an intoxicated woman one third of a block from her home on a cold night and then released her to walk home alone after sending her husband home, and the plaintiff suffered from hypothermia, <u>Kneipp v. Tedder</u>, 95 F.3d 1199 (3d Cir. 1996); and where officers ejected a drunk patron from a bar on a freezing Montana night where he died from hypothermia, <u>Munger v. City of Glasgow Police Dep't</u>, 227 F.3d 1082, 1087 (9th Cir. 2000). In each of these cases, the court concluded that the plaintiff was in a worse position after the officers intervened, and that the state acted with deliberate indifference to a known or obvious danger. <u>Patel v. Kent Sch. Dist.</u>, 648 F.3d 965 (9th Cir. 2011).

Under the "special relationship" exception, an officer may also be liable for an omission "when a state takes a person into its custody and holds him there against his will," including by incarceration. <u>Patel v. Kent Sch. Dist.</u>, 648 F.3d 965 (9th Cir. 2011). This exception only applies when a person is in custody.

In this case, plaintiffs allege under both the special relationship and the state-created danger theories, although they conflate the two.

**i. Special Relationship**

Defendants argue that any special relationship between Lum and defendants terminated once Lum was released from jail, and Lum died after being released from custody.

13

1       In <u>Coscia v. Town of Pembroke</u>, 659 F.3d 37 (1st Cir. 2011),

2   the court held that "in the absence of a risk of harm created or

3   intensified by state action there is no due process liability for

4   harm suffered by a prior detainee after release from custody in

5   circumstances that do not effectively extend any state impediment

6   to exercising self-help or to receiving whatever aid by others may

7   normally be available." In <u>Coscia</u>, the plaintiff exhibited signs

8   of mental distress while in custody and committed suicide shortly

9   after being released.

10      The court finds the <u>Coscia</u> holding to be inapplicable here,

11  because there is a triable issue as to whether the risk of harm to

12  Lum was intensified during his arrest and detention, where he had

13  no access to his medications under the circumstances noted above.

14  **ii. State-Created Danger**

15      Plaintiffs allege that by failing to administer a medical or

16  psychological evaluation during Lum's detention, the defendants

17  placed Lum in a situation more dangerous than the one they found

18  him in. Specifically, prior to Lum's arrest, he was closer to home

19  than when he was released from jail, less in need of medication,

20  and he had his dog with him.

21      Plaintiffs allege that defendants acted with deliberate

22  indifference towards a known danger to plaintiffs. Plaintiffs have

23  provided evidence that Officer Mendoza falsified an observation log

24  by recording that he had checked on Lum in the sobering cell when,

25  in fact, he hadn't checked on him as required by policy. According

26  to plaintiffs, Nurse Naval reported finding Lum alert and oriented,

1 even though the time of her examination was after Lum had been
2 released and had left the jail. Further, Lum told Officer Mendoza
3 that he was bipolar and under the care of a Dr. Lee, and that he
4 was taking medications. Officer Mendoza testified that he did not
5 know what "bipolar" meant, Depo. Mendoza 79:14-15, and he proceeded
6 to process Lum as an intoxicated person, and noted "No medical
7 conditions," into the jail's database. Mendoza did not call a nurse
8 to examine Lum at that time because, in his opinion, "you don't
9 call a nurse for drunk people." Id. 87: 10-11.

10    The court finds that a reasonable jury could find that by
11 arresting, detaining, and then releasing Lum without conducting a
12 proper medical evaluation, defendants put him in a more dangerous
13 state than he was in prior to arrest. A jury could conclude that
14 Lum's mental condition worsened while he was held in jail overnight
15 with no access to his medication. The court also finds that there
16 is a triable issue as to whether Officer Mendoza was deliberately
17 indifferent to Lum's well being.

18    The arresting officers did apparently fail to alert jail
19 personnel that Lum appeared to be having a mental health episode.
20 Given the disputed facts under these circumstances, the court
21 cannot find the arresting officers were not deliberately
22 indifferent to Lum's well being.

23    Accordingly, the court denies defendants' motion for summary
24 judgment on the Second Claim for relief.

25 **iii. Due Process Right to Medical Care While in Custody**

26    Apart from the state-created danger and special relationship

theories of liability, there is a triable question as to whether defendants deprived Lum of his right to medical care while in the custody of the county. In the pre-conviction context, that right derives from the due process clause, which "imposes, at a minimum, the same duty the Eighth Amendment poses: persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs," including psychiatric needs. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002).

A defendant is deliberately indifferent in this context if he knows of and disregards an excessive risk to the detainee's health and safety. Farmer v. Brennan, 511 U.S. 825 (1970). The defendant must actually be aware of the risk; it is not enough if he should have known of the risk but did not. Id.

It is apparent to the court that Officer Mendoza should have known of the excessive risk to Lum's safety. Lum told Mendoza that he was bi-polar, under the care of a doctor, and on medications. Mendoza observed Lum trying to open imaginary doors in his cell. The court concludes that there is a triable issue on the question of whether Officer Mendoza actually knew of a risk to Lum's health and safety. A jury might not find it credible that Officer Mendoza did not know that "bi-polar" refers to a serious mental health condition, despite being having received training on dealing with individuals with mental health issues. See Sida Report, ECF No. 48 at 15. Moreover, again the conduct of the arresting officers in this regard cannot be resolved by the court.

1    Accordingly, the court finds that the defendants are not
2    entitled to summary judgment on the second claim for relief.
3    **C. Third Claim: <u>Monell</u> liablity for "kick-out" policy**
4    As their third claim for relief, plaintiffs allege that the
5    City of Lathrop and County of San Joaquin ("the municipal
6    defendants") have a policy of accepting arrestees on "kick-out"
7    charges, holding them arbitrarily, and then releasing them in a
8    manner that puts them a risk of harm. Plaintiffs allege that
9    plaintiffs Fourteenth Amendment rights were violated as a result
10   of this policy.

11   In their complaint, plaintiffs alleged "other arrestees
12   charged as kickouts, and holding them for an arbitrary period of
13   time only to release them without any guidance, protection, or
14   assistance." However, plaintiffs have submitted evidence of only
15   one other similar incident involving San Joaquin County and another
16   city.

17   Evidence of only one prior incident does not raise a triable
18   fact as to whether there was a policy of treating "kickout"
19   arrestees in a unconstitutional manner. "Proof of a single incident
20   of unconstitutional activity is not sufficient to impose liability
21   under <u>Monell</u>, unless proof of the incident includes proof that it
22   was caused by an existing, unconstitutional local government]
23   policy, which policy can be attributed to a [local government]
24   policymaker. <u>Meehan v. County of Los Angeles</u>, 856 F.2d 102, 107
25   (9th Cir. Cal. 1988) (quoting <u>City of Oklahoma v. Tuttle</u>, 471 U.S.
26   808 (1985)). Plaintiffs provide no further evidence of an

1  unconstitutional policy with respect to kickout arrestees. Indeed,

2  plaintiffs argue that Officer Mendoza violated county policy that

3  requires inmates to be seen by Correctional Health Staff if booking

4  officers learn that an arrestee is on medication but doesn't have

5  the medication with him.

6      Accordingly, the court finds that the municipal defendants are

7  entitled to summary judgment on Claim 3.

8  **D. Claim Four: Inadequate Training**

9      Plaintiffs' Fourth Claim is for inadequate and reckless

10  training by the municipal defendants. In order to sustain such a

11  claim, plaintiffs would have to demonstrate a triable fact that the

12  "inadequacy of police training. . ." in this case "amounts to

13  deliberate indifference to the rights of persons with whom the

14  police come into contact." <u>City of Canton v. Harris</u>, 489 U.S. 378,

15  388 (1989). Plaintiffs have submitted no evidence of such

16  indifference. Rather, both plaintiffs and defendants have submitted

17  evidence of numerous policies adopted by the city and county with

18  respect to training officers to deal with mental health situations.

19      Accordingly, defendants are entitled to summary judgment on

20  Claim 4.

21  **E. Claim Five: ADA**

22      Plaintiffs allege that the municipal defendants discriminated

23  against Lum on the basis of a disability, and that they failed to

24  accommodate him, in violation of the Americans with Disabilities

25  Act.

26      The Ninth Circuit has held squarely that the ADA applies to

1   local law enforcement and correctional facilities. <u>Lee v. City of</u>

2   <u>Los Angeles</u>, 250 F.3d 668 (9th Cir. 2001). As this court previously

3   noted, "There are two theories generally recognized by courts in

4   applying the ADA in the context of arrests. See <u>Gohier v. Enright</u>,

5   186 F.3d 1216, 1221 (10th Cir. 1999). First, where police wrongly

6   arrested someone with a disability because they misperceived the

7   effects of that disability as criminal activity. Id. at 1220.

8   Second, where although police have properly investigated and

9   arrested a person with a disability for a crime unrelated to that

10  disability, they failed to reasonably accommodate the person's

11  disability in the course of investigation or arrest, causing the

12  person to suffer greater injury or indignity in that process than

13  other arrestees. <u>Id.</u> at 1220-21 (citing Gorman, 152 F.3d at 912-13

14  (holding such claim viable); Rosen, 121 F.3d at 157-58 (suggesting

15  in dicta such claim not viable); Patrice v. Murphy, 43 F.Supp.2d

16  5 1156 (W.D. Wash. 1999) (holding such claim not viable.))" Order,

17  ECF No. 25.   See also <u>Barnes v. Gorman</u>, 536 U.S. 181 (2002)

18  (reversing only the award of punitive damages in an ADA case

19  involving a disabled arrestee injured during transport to jail).

20      Plaintiffs' complaint alleges both theories here.

21      For the same reasons stated above, the court concludes that

22  there is a triable issue as to whether the defendants wrongfully

23  arrested Lum because they perceived the effects of a disability as

24  intoxication. Defendants have submitted evidence indicating that

25  it was reasonable to conclude that Lum was intoxicated, and

26  plaintiffs have submitted counterevidence to the contrary.

1   Accordingly, the court cannot grant summary judgment for defendants
2   as to the first theory of ADA liability.

3       Plaintiff's opposition does not offer any argument or evidence
4   in support of the second theory of liability. Defendants argue that
5   since Lum did not make any request for an accommodation, no
6   obligation to accommodate him was triggered. Defendants cite to
7   employment cases to support this proposition. The court finds no
8   binding case law that requires such a request before the ADA's
9   protections are triggered in the context of correctional
10  facilities. For example, in <u>Pierce v. County of Orange</u>, 526 F.3d
11  1190, 1217 (9th Cir. 2008), the Ninth Circuit held that the
12  district court had erred in denying relief to disable prisoners
13  seeking accommodations, without any mention of a specific
14  pre-litigation request for an accommodation.

15      Moreover, the four elements of an ADA claim in the context of
16  prison accommodations do not include a request for an
17  accommodation. Those elements are: "(1) the plaintiff is an
18  individual with a disability; (2) the plaintiff is otherwise
19  qualified to participate in or receive the benefit of some public
20  entity's services, programs, or activities; (3) the plaintiff was
21  either excluded from participation in or denied the benefits of the
22  public entity's services, programs, or activities, or was otherwise
23  discriminated against by the public entity; and (4) such exclusion,
24  denial of benefits, or discrimination was by reason of the
25  plaintiff's disability." <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th
26  Cir. 2002).

1  As defendants' only argument against plaintiffs' second theory
2  of ADA liability is that Lum never requested an accommodation, the
3  court DENIES defendants' request for summary judgment on the ADA
4  claim.

5  **F. Claims Six and Seven: State Claims**

6  Plaintiffs assert a wrongful death claim against all
7  defendants and a false arrest claim against the arresting officers.

8  **i. Immunity**

9  The defendants assert that they are immune from plaintiffs'
10  state law causes of action for wrongful death and false arrest.
11  Defendants argue that two immunities apply in this instant case:
12  Government Code Section 845.8(a), and Government Code 855.8(a).

13  The former of those sections provides: "Neither a public
14  entity nor a public employee is liable for any injury resulting
15  from determining whether to parole or release a prisoner or from
16  determining the terms and conditions of his parole or release or
17  from determining whether to revoke his parole or release." The term
18  "prisoner" includes an individual arrested for intoxication and
19  released without charge. Teter v. City of Newport Beach, 30 Cal.
20  4th 446 (2003). The immunity applies to injuries to the released
21  prisoner. In Ladd v. County of San Mateo, 12 Cal. 4th 913 (1996),
22  the California Supreme Court held that the immunity in Section
23  845.8(b), concerning prisoners attempting to escape, applies to
24  injuries sustained by the escaping prisoner. There, the Court noted
25  that the statute uses broad terms, and that "the reasons for
26  providing immunity for injuries caused by fleeing prisoners apply

equally, or with greater force, to self-inflicted injuries." <u>Id.</u> at 919. "The chilling effect upon law enforcement and custodial officers' performance of their duties that would result from the imposition of liability for a public employees' failure to maintain custody over a prisoner is the same whether that liability arises from an injury to a third party or an injury to the escaped or escaping prisoner." <u>Id.</u> The same reasoning applies with respect to Section 845(a), applicable here, and the immunity applies to injuries caused to Lum by those who made the decision to release him.

Plaintiffs assert their wrongful death claim against all defendants. The Section 845(a) immunity only applies to decisions to release a prisoner. Here, it may apply to any officer who made the decision to release Lum, and any municipal defendant that may otherwise have <u>Monell</u> liability for that decision. The Section 845(a) immunity cannot apply to the arresting officers or to Officer Mendoza, who were uninvolved in the decision to release Lum. Accordingly, only those defendants who were responsible for the decision to release Lum are immune from the wrongful death claim on the basis of Section 845.8(a), and are subject to summary judgment on the basis of that immunity.

Government Code 855.8(a) provides: "Neither a public entity nor a public employee acting within the scope of his employment is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental illness or addiction or from failing to prescribe for mental illness or addiction." Defendants

1   assert that this section shields all defendants from the wrongful

2   death claim.

3       Plaintiffs' claim, however, is not premised on diagnosis or

4   failure to diagnose.  Obviously the officers in this case are not

5   physicians and have no training sufficient to diagnose.  The crux

6   of this claim is not a failure to diagnose, but rather a failure

7   to arrange for a properly credentialed person to diagnose.  As

8   noted in this court's prior order, defendants may still be liable

9   for e.g., failing to obtain medical care for Lum if he was in

10  obvious need of it.  Plaintiffs' complaint alleges that defendants'

11  breached a duty of care by "failing to give Decedent a medical or

12  psychiatric evaluation and/or treatment and by deciding to release

13  him alone six miles from home, without money, shoes, a cellular

14  phone, without means of transportation and without means or

15  wherewithal to get home, shelter, or assistance."

16      Curiously, a California court has held that immunity applies

17  when an arresting officer fails to relay information about an

18  arrestee's mental condition to jail personnel. See <u>Johnson v.</u>

19  <u>County of Los Angeles</u>, 143 Cal. App. 3d 298 (Cal. App. 2d Dist.

20  1983) (sheriff's officers' decisions the process of determining

21  whether to medicate a prisoner fall within the immunity established

22  by Section 855.8.) This court is bound by the decisions of the

23  California Supreme Court**,** <u>Wainwright v. Goode</u>, 464 U.S. 78, 84

24  (U.S. 1983). District courts are not bound by decisions of state

25  intermediate courts, <u>Dimidowich v. Bell & Howell</u>, 803 F.2d 1473

26  (9th Cir. 1986), but they are not free to disregard them in the

absence of other "persuasive data." <u>West v. American Tel. & Tel.</u>
<u>Co.</u>, 311 U.S. 223, 61 S. Ct. 179, 85 L. Ed. 139 (1940). It appears
to this court that the plain language of the statute simply does
not support the intermediate court opinion.  Thus, with respect to
the remaining portions of plaintiffs' wrongful death claim,
855.8(a) provides no immunity.

In their opposition to the motion for summary judgment,
plaintiffs attribute Lum's death to Officer Mendoza's failure to
provide medical treatment to Lum despite knowing that Lum was
bi-polar and that he should have been on medications. Opp'n 26.
Officer Mendoza's conduct appears to have violated numerous
internal policies with respect to the treatment of arrestees
with mental health issues, not to mention common decency.  The
question, however, is whether those failures resulted in Jeremy
Lum's death.  The plaintiffs have provided no direct evidence of
the immediate circumstances of his death.  Thus, the question is
whether the totality of the circumstances that are known are
sufficient for a reasonable jury to draw an inference of causation.
It appears to this court that it is a close question, but one left
to a trier of fact, at least in the first instance.

**ii. False Arrest**

Plaintiffs' claim that the arresting officers arrested Lum
without probable cause, in violation of state tort law. For the
reasons discussed above, the court finds that there remains a
triable issue as to whether it was reasonable for the arresting
officers to arrest Lum for public intoxication. Accordingly,

1   defendants motion for summary judgment on this claim is DENIED.

2   **IV. Conclusion**

3       Defendants' Motion for Summary Judgment, ECF No. 71 is GRANTED

4   in part and DENIED in part.

5       [1] On plaintiffs' first claim for relief, summary judgment

6       is DENIED as to the arresting officers. The court will rule

7       on whether summary judgment should be granted as to the

8       municipal defendants after briefing from the parties, ordered

9       by this court on March 2, 2012.

10      [2]  On plaintiffs' second claim for relief, summary judgment

11      is DENIED.

12      [3] On plaintiffs' third claim for relief, summary judgment

13      is GRANTED to defendants.

14      [4] On plaintiffs' fourth claim for relief, summary judgment

15      is GRANTED to defendants.

16      [5] On plaintiffs' fifth claim for relief, summary judgment

17      is DENIED.

18      [6] On plaintiffs sixth claim for relief, the court GRANTS

19      summary judgment to defendants who made the decision to

20      release LUM, and DENIES summary judgment to the arresting

21      officers and Officer Mendoza.

22      [7] On plaintiffs seventh claim for relief, the court DENIES

23      summary judgment.

24      IT IS SO ORDERED.

25      DATED:  March 22, 2012.

26                                    LAWRENCE K. KARLTON
                                      SENIOR JUDGE
                                      UNITED STATES DISTRICT COURT

                                      25